JOHN WELD, JR., & another[1] vs. GLAXO WELLCOME INC. & others.[2]

Suffolk. December 8, 2000. - May 1, 2001.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & SOSMAN, JJ.

*Practice, Civil,* Standing, Judicial discretion, Class action. *Rules of Civil Procedure.*

A judge on a motion for certification of a class action under Mass. R. Civ. P. 23 did not abuse his discretion in granting class status without holding an evidentiary hearing. [84-86]

In an action against a pharmacy and multiple pharmaceutical companies brought by customers of the pharmacy, alleging that their confidential medical information was improperly disclosed and tortiously misappropriated for commercial gain as a result of a so-called "patient compliance program" devised by the pharmacy, sufficient information was presented to support the judge's determination that the named plaintiff representative of a class of customers certified under Mass. R. Civ. P. 23 was typical of the claims of the class [86-91], that common questions of law and fact predominated over individualized questions [91-92], and that the class action was superior to other available methods for fair and efficient adjudication of the controversy [92-95].

CIVIL ACTION commenced in the Superior Court Department on February 20, 1998.

A motion for class certification was heard by *Raymond J. Brassard,* J.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Kenneth Laurence,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ralph T. Lepore, III (Elizabeth M. Mitchell & Deborah E. Barnard* with him) for Glaxo Wellcome Inc.

---

[1]Jeffrey A. Kelley.

[2]Hoffmann-La Roche, Inc., and Warner-Lambert Company. The other defendants to the civil action, CVS Pharmacy, Inc., Elensys Care Services, Inc., and Merck & Co., have not appealed from the certification order.

*Fred A. Kelly, Jr. (Leigh-Ann M. Patterson* with him) for Warner-Lambert Company.

*David R. Geiger (Karen B. Dietrich* with him) for Hoffmann-La Roche, Inc.

*Arthur R. Miller (Jeffery Krinsk,* of California, & *David Pastor* with him) for the plaintiffs.

SPINA, J. This is an interlocutory appeal from an order of a Superior Court judge certifying a plaintiff class under Mass. R. Civ. P. 23, 365 Mass. 767 (1974). Three defendants, Glaxo Wellcome Inc. (Glaxo); Hoffmann-La Roche, Inc. (Roche); and Warner-Lambert Company (Warner-Lambert), sought review of the order, pursuant to G. L. c. 231, § 118, first par. A single justice of the Appeals Court denied the defendants' petition, but granted them leave to appeal from his denial to the full court. We transferred the case here on our own motion. We affirm the class certification order.

1. *Background.* The plaintiffs, John Weld, Jr., and Jeffrey A. Kelley, filed a civil action against several defendants, including CVS Pharmacy, Inc. (CVS), Merck & Co., Inc. (Merck), and the three defendants that have appealed. The subject matter of the complaint was a "patient compliance program" (program) devised by CVS whereby letters would be mailed to selected sets of its pharmacy customers at the behest of selected pharmaceutical manufacturers.[3] The plaintiffs brought the action on behalf of themselves and all similarly situated CVS pharmacy customers nationwide alleging that their confidential medical information[4] was improperly disclosed and tortiously misappropriated for commercial gain by CVS and the other defendants, citing violations of their privacy under G. L. c. 214,

---

[3]In June, 1999, shortly after the plaintiffs filed their motion for class certification, another Superior Court judge denied motions for summary judgment filed by CVS, Elensys, Merck, and Glaxo as to Kelley, and denied their motions without prejudice as to Weld, pending further discovery regarding whether Weld's prescription drug information had been disclosed to third parties. Warner-Lambert's and Roche's motions for summary judgment were not heard by this motion judge.

[4]In a brochure entitled "The CVS Pharmacy Computer: " 'Working For You,' " CVS assured its customers that only the customer, the customer's pharmacist, and physician would have access to prescription information, because "CVS has always respected the confidentiality of the information in your prescription files and will continue to do so."

§ 1B, and violations of G. L. c. 93A, § 2.[5] They also allege that the defendants were members of a conspiracy to violate the plaintiffs' rights under the theory that the manufacturer defendants induced or otherwise provided "substantial assistance" to CVS in its tortious invasion of the privacy of its pharmacy customers. See *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 189 (1998).

The program worked as follows. Each manufacturer provided CVS with specific selection criteria for a mailing. The selection criteria were designed to identify customers with particular medical conditions based on their prescription histories, or to identify customers who had filled prescriptions for drugs manufactured by the participating pharmaceutical companies. The manufacturers also provided CVS with the content of the letter that was to be sent to those customers who satisfied the criteria. CVS collected and scanned its pharmacies' databases according to the manufacturers' criteria. The actual merging of the letters with customers' names and addresses occurred at CVS corporate headquarters in Rhode Island and the offices of defendant Elensys, a database marketing company. The letters were printed on CVS letterhead and the name of the sponsoring manufacturer appeared at the bottom. Each letter recommended a different course of action including, for example, promoting the use of drugs manufactured by the sponsoring manufacturer ("switch letters"), reminding users of a specific drug to refill their prescriptions, or suggesting that recipients speak to their doctors about health risks associated with the medical condition for which they had purchased prescription drugs from CVS. CVS contracted independently with each manufacturer, who was each charged a fee based on the number of letters sent. These fees appear to have been the exclusive source of funding for the program.

The plaintiffs had had prescriptions filled at CVS pharmacies in Massachusetts. Sometime in 1997, Kelley, a diabetic, received

---

[5]The G. L. c. 93A claim had not been made against all defendants by the time of this appeal. It has been represented that motions have been filed seeking to amend the complaint to include a c. 93A claim against all defendants. The plaintiffs alleged additional claims against CVS alone that it breached its fiduciary duty and its duty of confidentiality with respect to the plaintiffs' prescription and medical information.

a letter sponsored by Merck warning against the dangers of high blood pressure and urging him to speak with his doctor about his health. Merck manufactures a drug to control high blood pressure, and as diabetics are at risk for developing high blood pressure, one of the selection criteria it furnished CVS was for CVS customers who had had prescriptions filled for diabetes medications. Weld did not receive a letter because his prescription profile did not match any of the manufacturers' selection criteria.

All the defendants maintained that the program was simply a method CVS devised to send its customers beneficial health and medical information. However, in response to negative media attention the program received in February, 1998, the filing of the original complaint, and an investigation by the Board of Registration in Pharmacy, CVS suspended the program. During discovery, CVS represented that it had voluntarily terminated the program.

Because money damages are not incidental to the relief sought by the proposed class and because rule 23 does not provide a mechanism by which plaintiffs can "opt out" of the class, the motion judge denied the plaintiffs' request for certification of a nationwide class of all CVS customers. See *Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 811 (1985). The judge also ruled that Weld lacked standing to raise a claim on behalf of the proposed class because he had not received any letter from CVS and therefore suffered no injury. See *Doe* v. *The Governor*, 381 Mass. 702, 705 (1980). Correspondingly, because Weld had no standing, his claim was deemed not typical of the class and he was precluded from serving as a plaintiff representative. Kelley, who did receive a letter, was determined to be a proper representative of a class of Massachusetts residents who actually received mailings. Members of that class make up approximately two per cent of CVS's customers in the Commonwealth.[6]

2. *Standard of review.* The decision to grant or deny class

[6]We recognize the tension between some of the conclusions in the ruling on the defendants' motion for summary judgment and those in the ruling on the plaintiffs' motion for certification. The summary judgment judge ruled that the claim that "CVS's marketing program as a whole, which involved at least the

status under rule 23 is within the broad discretion of the motion judge. See *Brophy* v. *School Comm. of Worcester*, 6 Mass. App. Ct. 731, 735 (1978). We review the decision for any abuse of that discretion. *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525, 537 (1986), *S.C.*, 406 Mass. 666 (1990). An abuse of discretion occurs when a decision is arbitrary, unreasonable, or capricious, *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 641 (1986), such as when a judge grants class status on the basis of speculation or generalization regarding satisfaction of the requirements of rule 23, or denies class status by imposing, at the certification stage, the burden of proof that will be required of the plaintiffs at trial. See *Blackie* v. *Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). See also *Waste Mgt. Holdings, Inc.* v. *Mowbray*, 208 F.3d 288, 297 (1st Cir. 2000). The standard defies mathematical precision, and our cases reflect that fact. See, e.g., *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, 371 Mass. 705, 713 (1977) (not necessarily abuse of discretion to rule on merits of claim without ruling on motion to certify class); *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 39-40 (1975) (not abuse of discretion to postpone discovery and make early ruling on certification, taking plaintiff's allegations as true).

The defendants suggest that the judge abused his discretion because he certified the class without holding an evidentiary hearing. Although it is within a judge's discretion to hold an evidentiary hearing, there is no such requirement. See *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595, 597 (1985) (no abuse of discretion where judge "conducted a hearing on the plaintiffs' motion for class certification [and] consider[ed] relevant factual materials submitted by the parties"). Here, the motion judge reviewed the pleadings, affidavits, briefs, and the earlier

use of Kelley's name, address and date of birth in conjunction with the systematic searching of customer prescription records, constitute[d] a violation of [the] plaintiffs' right of privacy" was a "novel question suitable for initial resolution by a jury." The class certification judge, on the other hand, ruled that the plaintiffs "presented no evidence that mere inclusion in the CVS database constituted any more of a violation of privacy than inclusion in any chain pharmacy's prescription database." As neither Kelley nor Weld appealed from the limitations imposed on the class by the class certification judge, we need not resolve any conflict.

memorandum on summary judgment in light of the require-
ments of rule 23. There is no indication that a reasoned decision
on the motion for class certification required anything more.
See *Waste Mgt. Holdings, Inc.* v. *Mowbray, supra* at 297 (under
Federal rule, case-specific analysis that goes beyond pleadings
but falls short of evidentiary hearing not abuse of discretion
because not indicative of improper "rel[iance] on a
generalization"). Cf. *Makuc* v. *American Honda Motor Co.*, 835
F.2d 389, 394 (1st Cir. 1987) (not abuse of discretion to deny
certification for failure to meet numerosity requirement where
sole support was two-year old affidavit asserting in conclusory
fashion that two per cent of Honda axles were "probably"
defective). There was no abuse of discretion in deciding the
motion without an evidentiary hearing.

3. *Rule 23.* Under rule 23, a plaintiff must show that (1) the
class is sufficiently numerous to make joinder of all parties
impracticable, (2) there are common questions of law and fact,
(3) the claim of the named plaintiff representative is typical of
the claims of the class, and (4) the named plaintiff will fairly
and adequately represent the interests of the class. See Mass. R.
Civ. P. 23 (a). In addition, a plaintiff must show that common
questions of law and fact predominate over individualized ques-
tions, and that the class action is superior to other available
methods for fair and efficient adjudication of the controversy.[7]
See Mass. R. Civ. P. 23 (b). See also *Fletcher* v. *Cape Cod Gas
Co.*, *supra* at 601.

The defendants do not contest the judge's determination that
the plaintiffs satisfied the numerosity or commonality elements,
but argue that the plaintiffs failed to meet their burden of proof
on the elements of typicality under 23 (a), and the predominance
and superiority requirements under 23 (b).

Although the plaintiffs bear the burden of establishing that
the class meets the requirements of rule 23, this burden must be
construed within the framework of the broad discretion judges

---

[7]Rule 23 "was written in the light of the Federal rule," *Baldassari* v. *Public
Fin. Trust*, 369 Mass. 33, 40 (1975), hence case law construing the Federal
rule is analogous and extremely useful. However, to the extent that rule 23
relaxes some of the requirements imposed on plaintiffs under the Federal rule,
our analysis may, in certain respects, differ. *Id.*

have to grant or deny a motion for certification. See *Fletcher* v. *Cape Cod Gas Co., supra.* The plaintiffs bear the burden of providing information sufficient to enable the motion judge to form a reasonable judgment that the class meets the requirements of rule 23; they do not bear the burden of producing evidence sufficient to prove that the requirements have been met.[8] See *Blackie* v. *Barrack, supra* at 901 ("neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule").

(a) *Typicality.* The judge ruled that Weld failed to satisfy the typicality requirement because, having suffered no injury, he lacked standing to raise any claim. The defendants argue that, by extension, Kelley fails to satisfy the typicality requirement because the letter he received from CVS was sponsored only by Merck. They contend that, as Kelley's alleged injury is not the result of their conduct, his claim is not typical of the class. See *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. 314, 317 (1976).

Typicality is established when there is "a sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class," and the claims of the named plaintiff and those of the class "are based on the same legal theory." 1 H. Newberg, Class Actions § 3.13, at 3-76 (3d ed. 1992). This alignment of claims and legal theories ensures that the named plaintiff, in "pursu[ing] his or her own self-interest . . . will advance the interests of the class members." *Id.* at § 3.13, at 3-75. A plaintiff representative normally satisfies the typicality requirement with "an allegation that the defendant acted consistently toward the [representative and the] members of a putative class." *Fletcher* v. *Cape Cod Gas Co., supra* at 606. See *Spear* v. *H.V. Greene Co.,* 246 Mass. 259, 266 (1923).

---

[8]That our rule 23, unlike the Federal rule, does not mandate an early ruling on certification does not turn this procedural matter into a question of substantive law. Rather, it is one of the many ways that our rule provides judges and parties with greater flexibility. See *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. 314, 317-318 (1976). In any event, a judge may revisit the issue of class certification after appropriate discovery is completed.

This case presents the somewhat more complicated question whether and in what circumstances a plaintiff who has been directly affected by the conduct of only some defendants may satisfy the typicality requirement in a class action against all defendants. As one court has noted, although not an uncommon scenario, "[t]here is a strange paucity of appellate court decisions dealing with th[is] precise question . . . ." *Moore* v. *Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990).

That standing and typicality are related concepts becomes most clear in a situation such as the one presented here. One might argue that Kelley lacks standing to raise these particular claims against these particular defendants, or one might instead argue that Kelley is not typical of the class because his direct claims are against CVS and Merck, while the unnamed members of the class have, variously, claims against Glaxo, Roche and Warner-Lambert.

The Supreme Court has held that, because art. 3 of the United States Constitution limits the jurisdiction of Federal courts to actual cases and controversies, a plaintiff who lacks standing and who, therefore, has no case or controversy, cannot invoke the Federal rules to bring a claim on behalf of a class. See *Warth* v. *Seldin*, 422 U.S. 490, 501 (1975). State courts, however, are not burdened by these same jurisdictional concerns and, consequently, may determine, particularly when class actions are involved, that concerns other than standing in its most technical sense may take precedence. See *Carpenter* v. *Suffolk Franklin Sav. Bank*, *supra* at 318 ("State courts need not become enmeshed in the Federal complexities and technicalities and are free to reject procedural frustrations in favor of just and expeditious determinations . . ."). See also *Cedar Crest Funeral Home, Inc.* v. *Lashley*, 889 S.W.2d 325, 329 (Tex. Ct. App. 1993) ("In class actions the requirement that the named representative plaintiff have a personal stake in the form of a direct injury is less compelling on jurisdictional grounds [because] the *class* itself is the real party in interest"). Cf. *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 423 Mass. 7, 14-15 (1996) (teachers' union, which alleged no injury, was proper plaintiff representative to pursue equitable relief on behalf of teachers). We therefore

analyze Kelley's ability to represent the class as a matter of civil procedure under rule 23 rather than as a matter of standing.

Whether Kelley can satisfy the rule 23 (a) typicality requirement involves two related, but distinct inquiries: (1) whether the claims and legal theories of Kelley and the class are sufficiently related and (2) whether there is a link among the defendants sufficient to permit the class action to proceed against all defendants.

The judge ruled, and we agree, that Kelley's claim and those of the class are based on a single course of conduct engaged in by CVS in the implementation of its patient compliance program. Kelley and every member of the certified class were CVS pharmacy customers whose prescription drug profiles were scanned according to pharmaceutical manufacturers' selection criteria without their knowledge or consent, which scanning resulted in a letter being sent. The content of the letter, the medical condition of the letter recipient, and the pharmaceutical drug use profile that triggered the sending of the letter are, for purposes of the typicality requirement, irrelevant. The conduct about which Kelley complains is identical to the conduct affecting the class, and the legal theories under which he is pursuing relief are the same as those that might be pursued by the class. Cf. *Baltimore Football Club, Inc.* v. *Superior Court*, 171 Cal. App. 3d 352, 359 & n.3 (1985) (plaintiff failed to satisfy typicality requirement where his alleged injury was merely "similar to those of other parties at the hands of other defendants").

Having concluded that the relationship with CVS provides a sufficient nexus between Kelley's claims and those of the unnamed members of the class, we turn to the question whether a sufficient nexus exists between CVS and the defendants. There are several types of connective links that courts have determined are sufficient to permit a plaintiff such as Kelley to represent a class against individual multiple defendants (as distinguished from a defendant class), where not all of the defendants had

direct contact with the named plaintiff.[9] See, e.g., Hewitt *vs.*
AAA Ins. Co., U.S. Dist. Ct. Nos. Civ. A. 98-3711, 99-0596
(E.D. La. 1999) (insurance companies engaged in pattern of set-
ting allegedly discriminatory insurance rates); *Monaco* v. *Stone*,
187 F.R.D. 50, 53-54 (E.D.N.Y. 1999) (judges responsible for
enforcing challenged statute); *Emig* v. *American Tobacco Co.*,
184 F.R.D. 379, 386-387 (D. Kan. 1998) (allegation of
conspiracy among tobacco companies); Weiss *vs.* Winner's
Circle of Chicago, Inc., U.S. Dist. Ct. No. 91C 2780 (N.D. Ill.
1995) (assignees of contracts originally made between single
defendant and plaintiff class).

Sometimes referred to as the "juridical links doctrine," the
analysis is analogous, though not identical, to that required
under Mass. R. Civ. P. 20, 365 Mass. 766 (1974), governing
permissive joinder. See *Moore* v. *Comfed Sav. Bank, supra* at
838; *La Mar* v. *H & B Novelty & Loan Co.*, 489 F.2d 461, 466
(9th Cir. 1973). See generally Henderson, Reconciling the
Juridical Links Doctrine with the Federal Rules of Civil
Procedure and Article III, 67 U. Chi. L. Rev. 1347 (2000). The
juridical links doctrine under rule 23, like joinder under rule 20
(a), is a procedural device that permits collective adjudication
of related claims, not a substantive rule that results in joint or
several liability. See *Kabatchnick* v. *Hanover-Elm Bldg. Corp.*,
331 Mass. 366, 369 (1954); *Baughman* v. *State Farm Mut.
Auto. Ins. Co.*, 88 Ohio St. 3d 480, 486 (2000). That the letter
Kelley received was sponsored by Merck and not by Glaxo,
Roche or Warner-Lambert, may be a defense these defendants
can assert against Kelley's right to recover from them, *Kabatch-
nick* v. *Hanover-Elm Bldg. Corp., supra*, but in the circumstances
of this case, that potential defense does not make Kelley's
claims atypical.[10] See *Baughman* v. *State Farm Mut. Auto. Ins.
Co., supra*.

---

[9]The motion judge based his certification of the class in part on the
plaintiffs' survival of the defendants' motion for summary judgment on the
count alleging a conspiracy among the defendants.

[10]While the link among the defendants is sufficient to permit collective
adjudication of the claim, joint or several liability for the injuries alleged will
only be available to the plaintiffs if they are ultimately able to meet their
burden of proof on their allegation that the manufacturer defendants engaged
in a conspiracy or concerted action with CVS to violate their rights. The

Although the contracts between CVS and the manufacturers appear to have been the product of independent, parallel negotiations, every contract created largely identical contractual obligations between CVS and the manufacturers, and the program appears to have been administered in a substantially similar manner across the board. Each manufacturer provided financing, selection criteria, and letter content in exchange for CVS's promise to send letters on its letterhead to its customers who satisfied those criteria. The manufacturers' contractual obligations to CVS were directly and exclusively related to the single course of conduct about which Kelley complains. Kelley's claims are typical because he and the members of the class shared a common relationship with CVS as pharmacy customers who were made unwitting participants in the program, and the manufacturers are juridically linked through their contracts with CVS and participation as sponsors of the program. The information presented by the plaintiffs was sufficient to support the determination that Kelley satisfies the typicality requirement.

(b) *Predominance.* The defendants additionally contend that the plaintiffs have failed to establish that common questions of law or fact will predominate, as required by rule 23 (b). Analogizing to *Fletcher* v. *Cape Cod Gas Co.,* 394 Mass. 595, 603 (1985), they argue that the determination of liability and damages in this case turns on individualized questions regarding the content of each letter, the customer's medical condition, and the subjective emotional reaction of each customer to the letter received. The analogy is inapt.

The plaintiffs in *Fletcher* sought damages for injuries resulting from exposure to urea-formaldehyde foamed-in-place insulation (UFFI). The defendants were the UFFI manufacturers and individual contractors who installed the insulation throughout Cape Cod. We recognized that common questions of fact did not predominate because the plaintiffs' exposure to UFFI was the result of separate contracts with various installers into dif-

plaintiffs are not required to prove the merits of their conspiracy claim nor their likelihood of success on that claim to succeed on their motion for certification. They need only show that Kelley's claim against CVS and Merck is typical of the claims that other class members have against CVS, Glaxo, Roche, and Warner-Lambert.

ferent homes, and the plaintiffs' injuries likely varied widely. *Fletcher* v. *Cape Cod Gas Co., supra* at 603.

Here, by contrast, liability may be established without reference to the precise content of each letter or precise reaction of each letter recipient. Because the alleged injuries were the result of the single course of conduct[11] engaged in by CVS and the other defendants, the determination whether the program violated G. L. c. 214, § 1B, G. L. c. 93A, § 2, or involved a tortious misappropriation for commercial gain of the customers' personal information will turn largely on common questions of law and fact regarding the duty CVS owed to its customers and the defendants' conduct in implementing the program. See *Waste Mgt. Holdings, Inc.* v. *Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime* v. *John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 64 (D. Mass. 1997) (requirement is " 'readily met' in 'cases alleging consumer . . . fraud' " where claim alleges single course of conduct). A conclusion that the program constituted a per se violation of the customers' privacy likely would establish per se liability of all defendants, thereby "provid[ing] a definite signal of the beginning of the end" of the litigation sufficient to satisfy rule 23 (b)'s predominance requirement. *Fletcher* v. *Cape Cod Gas Co., supra* at 603, quoting *Mertens* v. *Abbott Labs*, 99 F.R.D. 38, 41 (D.N.H. 1983).

Even if, as the defendants contend, an individualized inquiry is necessary to determine damages for invasion of privacy under G. L. c. 214, § 1B, for each letter recipient, a dispute we need not resolve, such a necessity at the damages stage does not preclude class certification where all other requirements are met. See *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 533 (D. Me. 1991).[12]

(c) *Superiority of class action over other methods of*

---

[11]This is so regardless of whether the alleged injuries are the result of the collection and scan of the prescription information, or the sending of the letters to the selected customers, see note 6, *supra.*

[12]The privacy claim is but one of several claims brought by the plaintiffs and is arguably the only one that might require individual determinations of damages.

*adjudicating claims.* This case presents a classic illustration of the policies of judicial efficiency and access to courts that underlie the consumer class action suit: it aggregates numerous small claims into one action, whose likely range of recovery would preclude any individual plaintiff from having his or her day in court. See J.W. Smith & H.B. Zobel, Rules Practice § 23.1 (1975 & Supp. 2001). Indeed, when common issues predominate, "judicial economy and consistency of result dictate class treatment." Wilton, Massachusetts State Court Class Actions, 72 Mass. L. Rev. 10, 16 (1987).

The defendants argue, however, that certifying a class in a mass tort is outcome determinative because it gives plaintiffs an unfair advantage, which will force them to settle.[13] They contend, therefore, that plaintiffs have not established that a class action is the superior method for fair and efficient adjudication of this controversy as required by rule 23 (b). The defendants' arguments are built on the faulty premise that this case is a mass tort and are without merit.

This is not a mass tort. Mass torts fall into three broad classes: mass accidents, toxic environmental torts and product liability claims. See 3 H. Newberg, Class Actions § 17.06, at 17-16 (3d ed. 1992). They involve large plaintiff classes whose members have suffered severe personal injury or death, alleging claims grounded in negligence having the potential for industry-breaking liability. See, e.g., *Amchem Prods.* v. *Windsor,* 521 U.S. 591 (1997) (asbestos litigation); *Castano* v. *American Tobacco Co.,* 84 F.3d 734 (5th Cir. 1996) (tobacco); *Matter of Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293 (7th Cir.), cert. denied sub nom. *Grady* v. *Rhone-Poulenc Rorer* Inc., 516 U.S. 867 (1995) (blood banks). See also 3 H. Newberg, Class Actions, *supra.* The wrong alleged in this case, by contrast, involves an offensive commercial practice, see e.g., *Baldassari* v. *Public Fin. Trust,* 394 Mass. 33 (1975), rather than an allegedly harm-

---

[13]In the alternative, the defendants suggest that the outcome determinative nature of class certification in mass torts justifies raising the bar on the plaintiffs' burden of proof at this stage. See, e.g., *Castano* v. *American Tobacco Co.,* 84 F.3d 734, 746 (5th Cir. 1996); *Matter of Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1298 (7th Cir.), cert. denied sub nom. *Grady* v. *Rhone-Poulenc Rorer* Inc., 516 U.S. 867 (1995).

ful product or mass accident.[14] Finally, even if the class were to prevail on all claims, there is no basis for concluding that this case holds the potential for industry-breaking liability. See *Waste Mgt. Holdings, Inc.* v. *Mowbray, supra* at 294 (noting that " 'ruinous' [liability] to a company of modest size might be merely unpleasant to a behemoth").

We find much to commend the position recently taken by the United States Court of Appeals for the First Circuit regarding concerns that class status may be outcome determinative. Construing the recent amendment to Fed. R. Civ. P. 23, which permits an interlocutory appeal from a certification order, the court held that, in addition to showing that a certification order may force them to settle, the defendant must "demonstrate some significant weakness in the class certification decision." See *Waste Mgt. Holdings, Inc.* v. *Mowbray, supra* at 295. This approach makes good sense: it furthers the policy behind class actions by not inserting additional barriers to certification beyond those already required under the rule, yet provides a framework for judges to consider the effect of certification, ensuring that this factor be accorded appropriate, secondary weight. See *id.*

A judge deciding a motion for class certification may consider the fact that denial of class status may effectively terminate a proceeding, or the fact that the grant of class status may, in the defendants' view, pressure them to settle. These factors alone, however, should not be determinative of a motion to certify a class. Nor does refusal to consider these factors constitute an abuse of discretion. Plaintiffs and defendants who seek interlocutory review of such orders must show that the judge, for example, sacrificed the purpose of the class action rule by focusing too narrowly on one requirement, or failed to consider a factor entitled to substantial weight. See *Carpenter* v. *Suffolk Franklin Sav. Bank*, 370 Mass. 314, 317-320 (1976).

As Federal District Court Judge Skinner noted, "It has been the tradition of the common law to adapt. There is a limit to a court's capacity to deal with major social problems, but this

---

[14]It is unsettled whether an invasion of privacy such as is alleged here constitutes a personal injury. *Rumbauskas* v. *Cantor*, 138 N.J. 173, 179-180 (1994).

case seems to . . . be still within the historical judicial function of providing private redress for violation of a legal right. . . . For this litigation . . . [a class action] offers the best means to adapt an established and tested structure to a modern phenomenon." *Payton* v. *Abbott Labs*, 83 F.R.D. 382, 390 (D. Mass. 1979), vacated on other grounds, 100 F.R.D. 336 (D. Mass. 1983). The order of class certification is affirmed.

*So ordered.*