Troy, Paul E., J.
This matter arises from a health alert issued by the Boston Public Health Commission (“Health Commission”) regarding a local Quizno’s restaurant, located at 74 Summer Street in Boston. The plaintiff, Ron Baker,[2] allegedly consumed food at the Quizno’s restaurant during the time referenced in the health alert. Defendants, Boris Lvovskiy and Sonya Litvinenko, individually and d/b/a Quizno’s Subshop #4688, owned and operated the Quizno’s restaurant. Defendant, Quizno’s Master LLC, is alleged to be the principal or ostensible principal of defendants, Boris Lvovskiy and Sonya Litvinenko. The plaintiff has brought claims, on behalf of himself and all those similarly situated, alleging breaches of warranty and negligence by the defendants. The plaintiff now moves for class certification. For the reasons stated herein, the Plaintiffs’ Motion to Certify Class is ALLOWED.
BACKGROUND
On June 27, 2004, the Health Commission issued a warning to those who had eaten at the Boston Quizno’s restaurant on June 17, 18, or 19 that they may have been exposed to the Hepatitis A Virus (“HAV”). An employee of the Quizno’s restaurant, who had helped to prepare uncooked and cold food, had received a diagnosis of HAV, which precipitated the health warning.
The Health Commission recommended that “(p)ersons who ate food prepared” at the Quizno’s restaurant on June 17, 18 or 19, 2004 receive a shot of Immune Globulin (“IG”), which temporarily protects against HAV. The Health Commission recommended that those exposed receive an IG shot by July 1, 2004. The Health Commission offered a free IG clinic at St. Anthony’s Shrine, in Boston on June 29 and 30 from 11:00 AM to 7:00 PM. One thousand four hundred seventy people attended the free clinic and received an IG shot.
The parties estimate that between 600 and 800 people ate at Quizno’s during the relevant period. A frequently asked questions pamphlet, attached to the Health Commission’s warning, indicated that HAV “is not typically transmitted by blood, semen or saliva... Only people who ate food prepared at Quiznos — such as sandwiches and salads (not bottled drinks) would be at risk of Hepatitis A.”
Once a person has been infected with HAV, that person becomes immune to further infection. HAV does not have long-term effects. However, fifteen percent of those infected have continuing symptoms for six to nine months.
In July 2004, there was only one reported case of HAV in the Boston area. That infected individual was out of town when the alert was issued and, therefore, did not receive notice of the potential exposure or the free clinic. This individual falls outside the contemplated class as he did not receive an IG shot.
During the hearing on this motion, the plaintiffs attorneys identified the class of plaintiffs seeking certification as “those persons who were required for *407 public and personal safety reasons to obtain a vaccination with immune-globulin because of . . . their consumption of food that was manufactured and sold by the defendants at their Quizno’s restaurant.”[3]
STANDARD
Mass.RCiv.P. 23 governs class actions. As a prerequisite to class certification, a parly seeking such certification must demonstrate that “(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.” Mass.R.Civ.P. 23(a). In addition to the prerequisite requirements, a party seeking class certification must also demonstrate that the “questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that class certification is superior to other available methods for the fair and efficient adjudication of the controversy.” Mass.R.Civ.P. 23(b).
The parly seeking certification bears the burden of proving that all six of the foregoing requirements have been met. Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 86-87 (2001). The certification of a class is not a matter of mathematical precision. Id. at 85. Therefore, the decision to certify a class is within the broad discretion of the trial judge. Id. at 84-85; Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 537 (1986). A plaintiff must provide “information sufficient to enable a judge to form a reasonable judgment that the class meets” the certification requirements. Weld, 434 Mass, at 87. Plaintiffs “do not bear the burden of providing evidence sufficient to prove that the requirements have been met.” Id., citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975) (maintaining that neither the possibility that the plaintiffs’ claims will ultimately fail nor the possibility that a decision to certify a class may unforeseeabfy turn out incorrect, is a proper basis to decline certification).
Notably, the predominance requirement is satisfied by a “sufficient constellation of common issues [that] bind class members together.” Weld, 434 Mass. at 92, paraphrasing in parenthetical Waste Mgt Holdings Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000). A trial judge’s discretion is “particularly extensive when dealing with the ‘superiority’ requirement of rule 23(b).” Berry v. Town of Danvers, 34 Mass.App.Ct. 507, 515, citing Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 601 (1985).
DISCUSSION
The Defendants do not dispute that the plaintiffs have met the preliminary prerequisites for a class action: numerosity, commonality, typicality, and adequacy. Mass.R.Civ.P. 23(a). The defendants focus their challenge upon Mass.R.Civ.P. 23(b).
I. MassRCiv.P. 23(b)(1): Predominance of Common Factual and Legal Issues
The defendants contend that issues unique to individual potential class members predominate over common issues. Contrary to the defendant’s contention, issues common to all class members clearly predominate in this action.
The predominant issues to be sorted out during discovery and at trial relate to the defendants’ alleged negligence and breaches of warranty. The central focus of this action will likely be upon the liability of the defendants rather than the distinctive features of the individual plaintiffs. During discovery and at trial, the parties will identify the defendants’ duties owed to their patrons, whether the defendants breached those duties, and finally, if a breach occurred, whether that breach caused the health alert. See Weld, 434 Mass. at 92. The limitation of the class to those that actually ate at Quizno’s during the relevant time period largely mitigates potential concerns regarding each individual plaintiffs distinct claims.[4]
The contemplated plaintiffs also share a number of common concerns related to damages, including, but not limited to: the discomfort in receiving the IG shot; the mental distress experienced as a result of each individual’s potential exposure; and, the inconvenience arising from the necessity to receive the IG shot. These potential damages are real and, therefore, compensable.
The defendants argue that each individual plaintiff will claim distinct damages. For example, some plaintiffs may have been more distressed than others at the news of their potential exposure. Some plaintiffs may have lost substantial income due to an interruption in their employment. Still others may have an extraordinary fear of needles. To be sure, these potential concerns are unique to individual plaintiffs. It is not uncommon in class actions that some members of a plaintiffs’ class will receive more than their actual injuries and others less. Such imperfections are endemic to class actions, however, and are but one consideration when deciding whether to certify a class.
The potential differences in damages among the contemplated plaintiffs is a factor weighing against class certification, but does not carry the weight of the aforementioned common issues, which will constitute the locus of the ensuing litigation.[5] Accordingly, given the extensive common issues, both legal and factual, among the contemplated class members to this action, this Court finds that a “sufficient constellation of common issues” predominate the action. Weld, 432 Mass. at 92, paraphrasing in parenthetical Waste Mgt. Holdings, Inc., 208 F.3d at 296.
II. Mass.R.Civ.P. 23(b)(2): Superiority of the Class Action
The defendants also contend that a class action is an inferior method of adjudication compared to the *408 adjudication of individual actions brought by plaintiffs. This contention is based, in large part, upon the same arguments discussed in Section I related to each individual plaintiffs damages.
In short, the “fair and efficient” adjudication of the plaintiffs claims is best achieved via a class action. Mass.R.Civ.P. 23(b). Pragmatically, a class action may be the plaintiffs’ only viable means of attaining compensation. See Aspinall, 442 Mass. at 393, citing Weld, 434 Mass. at 93; see also Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997). The potential awards for affected individual plaintiffs in this case are dwarfed by the prohibitive costs of pursuing an individual claim against the defendants. A class action suit allows the plaintiffs to pool their small individual claims, thereby rendering their composite action sustainable. See Weld, 434 Mass. at 93, citing J.W. Smith & H.B. Zobel, Rules Practice §23.1 (1975 & Supp. 2001); see also Amchem Products, Inc., 521 U.S. at 617 (applying cognate federal rule and noting the intended purpose of the class action mechanism, to empower those plaintiffs with common yet paltry claims by allowing them to aggregate those small claims). Additionally, dedication of the court’s limited resources, time and energy to the oversight and adjudication of a single class action is likely a more efficient use than their dedication to potentially hundreds of similar smaller suits.
In further support of this conclusion, this Court notes that no individual actions have yet been commenced and that no choice of law issues appear likely to arise. Further, as the alleged negligent conduct took place in this Court’s jurisdiction, this Court is best suited to adjudicate the plaintiffs’ claims.
ORDER
For the foregoing reasons, after careful consideration of the parties’ written submissions and oral arguments, the Plaintiffs’ Motion to Certify Class is ALLOWED.

On December 16, 2005, the court allowed the Plaintiffs Motion to Substitute Class Representative (Connolly, J.). At that time, Ron Baker replaced the original plaintiff in this action, Rusty L. Whitaker.

In the plaintiffs original complaint, the plaintiff also sought to certify “those persons who were required for public and personal safety reasons to obtain a vaccination with immune-globulin because of . . . their exposure to, or close proximity with, persons who ate food at the Quizno’s or who became infected with HAV as a result of consuming contaminated food that was manufactured and sold by the defendants at their Quizno’s restaurant.” The plaintiffs concession, narrowing the class, is accepted and incorporated into this Court’s Order granting certification.

An outstanding issue remains as to how the plaintiff class will be identified in accordance with this court’s Memorandum of Decision and Order which limits the class to those who ate at Quizno’s during the relevant period. Counsel are best situated to determine an appropriate mechanism to identify class members. Therefore, counsel should work together to fashion such a mechanism to identify members of the plaintiff class. Should counsel reach an impasse, they may seek further guidance from the court.

The Commonwealth’s version of Rule 23 is intended to grant parties and judges greater flexibility than its federal counterpart. Weld, 432 Mass. at 87 n.8. To that effect, the Court may, following appropriate discovery, revisit the decision to certify the class, particularly if the plaintiffs’ individual damage claims turn out to be more disparate and significant than originally thought. Id.; Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381, 398 n.22 (2004) (applying class certification standard under G.L.c. 93A, §9(2), but commenting generally upon class actions).