Wilkins, Douglas H., J.
Twelve plaintiffs have sued Fitchburg Gas and Electric Light Company (“FG&E” or “the Company”) on behalf of a class of similarly situated customers for damages and injunctive relief arising out of alleged injuries suffered during a major ice storm in 2008. Having survived FG&E’s motion for summary judgment, the plaintiffs have filed the Plaintiffs’ Motion for Class Certification (“Motion”) on the claims under G.L.c. 93A (Counts IV (§9 claim) and V (§11 claim)). The plaintiffs’ proposed class consists of:
All residential and business customers of Defendant Fitchburg Gas and Electric Light Company and their dependents, tenants, employees and other users of electricity who sustained damages as a result of Defendant Fitchburg Gas and Electric Light Company’s inadequate preparation for and response to the December 2008 Ice Storm which resulted in the interruption of electrical service in Fitchburg, Lunenburg, Townsend, Ashby and other Massachusetts communities from on or about December 11, 2008 to on or about December 25, 2008 and thereafter.
FG&E has opposed the Motion. After a hearing, the Motion is DENIED.
BACKGROUND
The Court incorporates the facts set forth in its Memorandum of Decision and Order on the Parties’ Cross Motions for Partial Summary Judgment, dated January 4, 2013 (“Summary Judgment Decision”). It adds the following facts relating to the Motion.
FG&E receives all of its electric power from four 115 kilovolt (“kV”) transmission supply lines owned by National Grid. All four lines tie into the Company’s Flagg pond substation, located in southwest Fitch-burg. From the Flagg pond substation, FG&E’s distribution network includes 60 miles of sub-transmission lines, off of which 680 miles of distribution lines feed. FG&E had about 28,500 customers at the time of Winter Storm 2008.
During Winter Storm 2008, the Company’s distribution system suffered extensive damage. The weight of ice caused limbs and sometimes whole trees to come down onto large portions of the Company’s infrastructure, snapping utility poles in half and knocking down electrical lines. Damage continued after Winter Storm 2008 because trees continued to fall from the weight of the ice. For a period of one hour and 20 minutes early on December 12, 2008, damage to the transmission lines and the Flagg Pond substation transformer resulted in the loss of supply to the Company’s entire system. After that, the Company experienced outages to several of its three sub-transmission lines, one of which tripped out repeatedly. Those lines are among those that FG&E designated for higher priority tree trimming when it cut back on other aspects of its vegetation management program.
Different plaintiffs lost power for different reasons. For instance, two plaintiffs lost their individual service lines when trees in their yards fell and ripped down the wires. The homeowner is responsible for repairs in that instance.
In their trial plan, the plaintiffs “propose a split trial with two phases.” They explain:
The only issues in Phase I will consist of liability and multiple damages . . . Assuming a determination favorable to the Plaintiffs, the case will proceed to Phase II.
Phase II will deal with individual causation, compensatory damages, affirmative defenses [footnote omitted] and equitable relief... Class members will have the opportunity to submit claims in a uniform manner for adjudication. Consumer class members *613 who do not seek actual damages under G.L.c. 93A, §9 could claim $25 in statutory damages . . . Plaintiffs propose that there could be a small claim categoiy for all claims under the current Small Claims limitation of $7,000. See G.L.c. 218, §21. Any contested claims in this category could be processed by a special master under rules fixed by the Court.. . Plaintiffs propose that all claims over $7,000 be adjudicated in this Court, unless other provision is made by court order or agreement.
Plaintiffs’ Trial Plan, pp. 2-3.
DISCUSSION
I. CLASS CERTIFICATION UNDER G.L.c. 93A
The Motion relies upon the class action provisions of G.L.c. 93A, §9(2), which provide in relevant part:
Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injuiy to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons . . .
G.L.c. 93A, §11 contains virtually the same language, as applied to business plaintiffs.
Because G.L.c. 93A, §§9 and 11, specifically authorize suits on behalf of “other persons similarly situated” and differ in significant respects from Mass.R.Civ.P. 23, the Supreme Judicial Court has cautioned against “equating the similarity requirements of rule 23(a) with the requirements of §9(2) that the parties seeking certification are ‘similarly situated’ and have suffered a ‘similar injuiy’ as members of the class they seek to represent.” Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 370-71 fn. 66 (2008) (case under G.L.c. 149, §149), quoting Aspinall v. Philip Morris Cos., 442 Mass. 381, 391-92 (2004), quoting Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605 (1985). The court has greater discretion under rule 23 than under specific class action statutes to decide whether or not to certify a class. Id. “A judge possesses ‘a degree of discretion’ in this matter, but when the judge is deciding a certification request under [G.L.c. 93A], §9(2), the judge must bear in mind ‘a pressing need for an effective private remedy for consumers.’ ” Kwaak v. Pfizer, Inc., 71 Mass.App.Ct. 293, 297 (2008), quoting Aspinall, 442 Mass. at 391-92, quoting Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605-06 (1985). ‘The right to a class action in a consumer protection case is of particular importance where the aggregation of small claims is likely the only realistic option for pursuing a claim.” Feeney v. Dell, Inc., 454 Mass. 192, 202 (2009). Class actions also promote the public interest in deterring violations of the law. Id. at 202-03.
To maintain a c. 93A class action, the plaintiffs must show (1) that they are entitled to bring a c. 93A action, (2) the use or employment of an unfair or deceptive act or practice, (3) which has caused similar injuiy to (4) numerous other persons similarly situated, (5) if the court finds that the plaintiff(s) adequately and fairly represent(s) such other persons. The plaintiffs have met the first two requirements, as the Court found in the Summary Judgment Decision. FG&E’s lack of emergency preparedness and deceptive public statements were not individualized actions, but were systemic failures that may be found to violate its public service obligation and constitute unfair and deceptive practices as to all its customers. The proposed class, consisting of all of FG&E’s approximately 28,500 customers, is certainly “numerous.”
The plaintiffs therefore need to provide sufficient evidence to address the remaining elements (3) and (5):
On a motion for class certification pursuant to either rule 23 or G.L.c. 93A, §9(2), “[t]he plaintiffs bear the burden of providing information sufficient to enable the motion judge to form a reasonable judgment that the class meets the requirements of rule 23 [and c. 93A, §9(2)]; they do not bear the burden of producing evidence sufficient to prove that the requirements have been met” (emphasis added). Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 87 (2001).
Kwaak v. Pfizer, Inc., 71 Mass.App.Ct. 293, 297 (2008). For these purposes, the Court considers the facts summarized in the Summary Judgment Decision, as well as the plaintiffs’ affidavits specifically directed to the class action question.
The key question is whether the c. 93A violations “caused similar injuiy.” The plaintiffs define injury as the Company’s invasion of the customers’ legally protected interest in safe and reliable service and timely restoration. If that definition applies, then all class members have indeed suffered similar injuiy, for 100% of FG&E’s customers lost power.
The problem is that, even if “injuiy” is defined so abstractly, the element of causation remains a predicate for liability, as the Court held in the Summary Judgment Decision. The customer’s loss of power must be traced to a c. 93A violation before a cause of action exists. See Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 175 (“In the liability portion of a bifurcated trial, the plaintiff must show that the defendant’s breach of duly caused some harm for which the law provides redress because there can be no liability in the absence of causation.”). It is true that “classes may be certified for the purpose of determining liability even where individual inquiries may be necessaiy on the issue of damages.” Salvas, 452 Mass. at 368. But the plaintiffs here do not propose to resolve liability in Phase I, because they leave causation to Phase II. Their suggestion runs afoul of the principle that the Court may not “certify a class action for the purpose of deciding limited common issues.” Fletcher v. Cape Cod *614 Gas Co., 394 Mass. 595, 602 (1985) (agreeing with trial judge and adding: “We are unwilling to read into either the rule or the statute the authority for issue certification expressly provided by the drafters of the Federal rule”).
In any event, whether addressed in Phase I or II, causation requires analysis essentially on an individual (or small group) basis.[1] Some customers were destined to lose power in a storm of the severity of Winter Storm 2008, even if the Company had acted in exemplary fashion. Early in the storm, FG&E briefly lost all of its power from National Grid due to problems entirely outside FG&E’s network. That early power loss, though brief, could not possibly have been within the Company’s control. FG&E had some control once National Grid restored the power feed, but could not have prevented widespread power outages. As everyone agrees, the storm’s severity was simply too great to expect anything but a massive power outage. For instance, the plaintiffs expert has not expressed an opinion that FG&E was at fault for loss of power on the 69 kV sub-transmission lines or the 13 kV feed to the underground portion of the system, which, when repaired, restored power to nearly 40% of the Company’s customers. Even properly trimmed trees would have fallen on power lines in many cases. Trees on private property, beyond the legal reach of any tree trimming program, would have fallen on power lines. Customers served by underground distribution lines, such as those near downtown Fitchburg, benefitted from a prompt restoration of power, consistent with FG&E’s public statements, and nothing suggests that they would have suffered any shorter power outage in the absence of any unfair and deceptive practice. Whether FG&E’s violations, as opposed to acts of nature alone, caused injury to a particular consumer (even if one defines injury as loss of power) is a highly individual inquiry.
On the deceptive public statements claim, the class members did not suffer similar “injury,” if any, from deceptive statements. Many never spoke to a customer service representative (“CSR”). Not all actually heard or learned of a Company public service announcement (“PSA”). Most importantly, the PSAs, statements by CSRs and other public statements may have been accurate as to some class members. Named plaintiffs Poisson and Evans on the Common had their power restored within approximately two days. By December 14, 11,000 customers (nearly 40%) had power restored. In that category are the customers receiving power from the underground distribution lines in or near Fitchburg center, whose electricity was restored relatively quickly. It is impossible to say that those customers were injured by c. 93A violations, let alone “similarly injured” when compared to the large number of customers who lost power for more than a few days.
Judged in light of existing authority, this case does not fall within the category of cases where the nature of the unfair and deceptive act, in context, necessarily results in injury to consumers. A prime example of that type of case is Aspinall, 442 Mass. at 397, where “consumers of Marlboro Lights were injured when they purchased a product that, when used as directed, exposed them to substantial and inherent health risks that were not (as a reasonable consumer likely could have been misled into believing) minimized by their choice of the defendants’ ‘light’ cigarettes.” For that reason, the Court found “individual inquiries concerning each class member’s” smoking behavior or “individual physical harm” unnecessary. Id.[2]
This case falls within a different category. Here, the unfair and deceptive act may or may not cause injury to a particular consumer, because the acts can occur without causing harm, and the harm (power outage) can occur without the acts. Representative of those 1ypes of c. 93A violations is Kwaak, 71 Mass.App.Ct. at 300-01:
In this case, there is insufficient information in the record to identify any such similarity of exposure, deception, and causation. The class certified is everyone who purchased Listerine products during the advertising campaign, regardless whether a purchaser was exposed to the campaign. Unlike in Aspinall, not every product was mislabeled . . . Also unclear is whether those exposed to the deceptive aspects of the advertising campaign purchased Listerine for reasons unrelated to the advertising, such as to freshen their breath or as an adjunct to flossing. Compare Aspinall, supra at 394 (deceptive advertising of cigarettes as light, with lowered tar and nicotine, could reasonably be found to have caused smokers, interested in purchasing light, lowered tar and nicotine cigarettes to purchase Marlboro Lights). Whether a causal connection exists between a deceptive act and a loss is not just difficult to identify but appears to vary widely depending on the customer.
It follows that the plaintiffs have not shown that FG&E’s unfair and deceptive acts regarding storm preparation and public statements “ha[ve] caused similar injury to numerous other persons similarly situated . . .” within the meaning of G.L.c. 93A, §§9(2) and 11. The availability of statutory minimum damages does not alter the result. See Lord v. Commercial Union Ins. Co., 60 Mass.App.Ct. 309, 310-11 (2004) (“the finding that absence of notice was not the cause of the plaintiffs loss precludes the award of $25 in damages”).
A different problem affects the claims based upon estimated bills. Anyone who lost power for an appreciable period and received an estimated bill that reflected no adjustment for power loss suffered an injury caused by the unfair and deceptive way in which the bills were calculated, within the meaning of Leardi v. *615 Brown, 394 Mass. 151, 157-63 (1985), as more fully discussed in the Summary Judgment Decision. While that loss is likely very small as to each individual, the claim for statutory damages may be viable and, indeed, may simplify any class action based upon the estimated bill claim. Compare Lord, 60 Mass. at 310-11.
A class of persons who received such bills might be certified, but the plaintiffs have not sought such a class, except as one of sixteen alternative requests, expressed in a single line of their trial plan. Since a number of named plaintiffs (and an even larger number of class members) never received such bills, certification of an estimated-bill-class would require a major restructuring of the complaint and elimination of many named and unnamed plaintiffs. There has not been enough opportunity for arguing that one alternative, including a full exploration of whether an estimated-bill-class would be consistent with the prohibition against certifying a class to decide limited common issues (Fletcher, 394 Mass. 595) or whether such a class would be acceptable because it would address all aspects of liability on the estimated-bill claim. The pleadings, as they stand, do not permit certification of a class consisting of only some plaintiffs.
II. CLASS CERTIFICATION UNDER MASS.R.CIV.P. 23.
The court has greater discretion under rule 23 than under G.L.c. 93A to decline to certify a class. Aspinall v. Philip Morris Cos., 442 Mass. 381, 391-92 (2004), quoting Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605 (1985). Where the Court has concluded that a c. 93A class is not appropriate, it would be surprising to find that a class action is appropriate under Rule 23. Since the gross negligence and injunctive claims do not fall within c. 93A, however, the Court addresses Rule 23 certification.
1.Numerosity
There is no question that “the class is so numerous that joinder of all members is impracticable.” Joinder of 28,500 plaintiffs is impracticable.
2.Common Questions of Law and Fact
As is clear from the Summary Judgment Decision, FG&E’s practices applied system-wide and had far-reaching consequences, but actual injury to each individual depends upon analysis of discrete facts, which are not common to all 28,500 plaintiffs. See Salvos, 452 Mass. at 366, 370 (“all members of the class were unarguably the beneficiaries of identical terms of employment”; evidence that “all of the class members . . . were subject to the identical terms and conditions” of employment). These questions do not merely go to the amount of damages, but affect whether each class member can establish liability under G.L.c. 93A. The plaintiffs’ trial plan does not change the fact that there would potentially be 28,500 trials to determine whether any given customer suffered iniury sufficient to establish liability under G.L.c. 93A.
I conclude that the facts of this case do not meet the commonality requirement.
3.Tfypicality
The named plaintiffs claims are only partly “typical of the claims ... of the class.” Mass.R.Civ.P. 23(3). The Company did act consistently toward class members with respect to storm preparedness, public statements, estimated billing and the like. See Fletcher, 394 Mass. at 606 (‘The typicality requirement may be satisfied by an allegation that the defendant acted consistently toward the members of a putative class”). Typicality is more attenuated on the causation question. As the facts on summary judgment show, some of the named plaintiffs suffered veiy long outages, while others suffered shorter outages consistent with the Company’s PSAs (and with expectations from a storm of this magnitude). While that variety may appear to be a strength, in fact the twelve plaintiffs probably include some who lack any c. 93A claim at all. To try to advance a theory for those plaintiffs, when other plaintiffs may have a much stronger theory, invites conflicts within the named plaintiffs and mirrors larger conflicts within the class between those who truly suffered injury from actionable wrongs and those whose concerns are more policy-based or otherwise uncoupled from cognizable personal injury. Typicality does not weigh heavily in favor of certification, but the Court’s concerns on that score are better addressed under the concepts of superiority and commonality.
The defendants do not seriously otherwise dispute the representation by these twelve plaintiffs or the competence and appropriateness of counsel as class counsel.
4.Fair Protection of the Class’s Interests
The Court cannot find that the twelve plaintiffs “will fairly and adequately protect the interests of the class.” Mass.R.Civ.P. 23(a)(4). As just noted, some adversity of interest exists between those with no claim and those with strong claims. See generally Smith and Zobel, Massachusetts Rules Practice, §23.7, 6 Mass. Practice Series, p. 339-40 (2006). To be sure, the plaintiffs have shown great diligence in advancing the claims of the entire class to date, attending the hearings and testifying at depositions. Likewise, their counsel has exhibited the requisite competence and integrity as demonstrated by the discovery conducted to date (as contained in the summary judgment record), by the memoranda and supporting materials on the motions reviewed by the court on summary judgment and on this Motion and by counsel’s experience in such matters. In any event, the Court stands ready to intervene in the unlikely event that any future deficiency appears on this score. Id. That does not *616 change the fundamental problem created by the need to prove injury on an individual basis.
5. Predomination of Common Issues
There are individual issues concerning injury, causation and damages. It is true that “a necessity [for individualized inquiry] at the damages stage does not preclude class certification where all other requirements are met.” Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 92 (2001). In this case, however, as shown above, common issues do not predominate where the issues surrounding causation injury are unique to each customer. In practice, the effort needed to address the common issues would be dwarfed by the distinctly separate issues concerning the effect of the Company’s systemic failures upon the individual class members. “Although the members of the proposed class do enjoy a loose commonality on both the [gross negligence] and the closely related Chapter 93A claims, it is not such as would prevent the proceeding from disintegrating into a series of mini-trials of the fact issues already identified in the discussion of Rule 23" and in the above treatment of the c. 93A class action request. See Holzman v. GMC, 2007 Mass.Super. LEXIS 462 at *36 (Mass.Super.Ct. 2007).
6. Superiority
Finally, I cannot find that “a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” Mass.R.Civ.P. 23(b). It is true that the general legislative policy favors class actions in these types of cases (G.L.c. 93A, §2, 11); see Weld, 434 Mass. at 93 (“This case presents a classic illustration of the policies of judicial efficiency and access to courts that underlie the [employee] class action suit: it aggregates numerous small claims into one action, whose likely range of recovery would preclude any individual plaintiff from having his or her day in court”).
The problem is that a class action in this case would not prevent individualized adjudication of liability, because of the need to show causation on a plaintiff-by-plaintiff basis. Certification would therefore draw people into the process who had no interest in joining this case and result in thousands of individual trials affecting people who did not choose to sue in the first place. Once in the case, each individual would need to prove causation on a house-by-house, street-by-street or, at least, line-by-line basis. That task would be enormous and unmanageable in any fashion consistent with the defendant’s due process rights to contest those individual showings. I find that a class action is not the superior means of adjudicating this case.
III. CERTIFICATION OF A DECLARATORY OR INJUNCTIVE CLASS
As noted in the Summary Judgment Decision, injunctive relief addressing the Company’s exercise of its franchise is not appropriate.
On the other injunctive and declaratory claims, the Court found the record inadequate to demonstrate whether the Company’s present conduct and methodologies still include unfair and deceptive acts or practices. On the Class Certification Motion, the plaintiffs have the burden of production. The lack of a record showing a plausible basis for entering class-wide injunctive relief against practices that presently affect or threaten the plaintiffs with c. 93A violations therefore requires denial of a class for equitable relief. That is particularly true where, for all that appears, some class members may be content with the Company’s current practices, may oppose relief that might result in increased utility costs or rates, and may not wish to be part of a class claiming otherwise.
CONCLUSION
For the above reasons, the Plaintiffs’ Motion for Class Certification is DENIED.

 That is not to deny that some groups of plaintiffs served by common transmission, distribution, secondary or lateral Unes might be able to estabUsh a common cause, such as a particular tree or Une of trees that fell due to inadequate trimming or the concrete impact of a systematic failure upon a street or neighborhood served by a particular line.

 In the same category is Bennett v. Milford Water Company, Worcester Superior Court No. 2009-2166, Memorandum of Decision and Order on Plaintiffs’ motion for Class Certification and Plaintiffs’ Trial Plan and Order of the Court (December 31, 2012) (class members sustained damage or injury as a result of a state Boil Water Order caused by the failure to provide potable water). There, the harm was that all class members were ordered to boil water, which necessarily arose from the company’s failure, and it was not necessary to assess causation on an individual basis. FG&E’s failures here did not cause any similar blanket injury.